UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RASHAD SELLERS,
    Plaintiff,

v.

ANDREA, et al.,
    Defendants.

No. 3:22-cv-585 (SRU)

### INITIAL REVIEW ORDER RE: AMENDED COMPLAINT

Plaintiff, Rashad Sellers ("Sellers"), currently incarcerated at MacDougall-Walker Correctional Institution, brings this action *pro se* under 42 U.S.C. § 1983. By Initial Review Order filed August 11, 2022, the Court dismissed the Complaint with leave to amend to correct identified deficiencies in the claims. Sellers has filed an Amended Complaint against five defendants: Nurses Sandy and Andrea, Warden Robert Martin, Commissioner Rollin Cook, and Medical Supervisor Nicole. Sellers asserts claims for deliberate indifference to medical needs and denial of equal protection against Nurses Sandy and Andrea and claims for supervisory liability against the other three defendants. Sellers seeks damages and declaratory relief.

**I.    Standard of Review**

Under Section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts

to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**II.     Factual Background**

On April 17, 2020, Sellers was confined at Bridgeport Correctional Center as a pretrial detainee. Doc. No. 18 at ¶ 1. A few days earlier, several inmates from his housing unit had tested positive for COVID-19 and were transferred to quarantine and to "be treated" at Northern Correctional Institution. *Id.* at ¶¶ 3-5. On April 17, 2020, Sellers wrote to the medical unit stating he knew that inmates he had encountered daily and with whom he had attended recreation daily had tested positive for COVID-19. *Id.* at ¶ 5. Sellers stated that he had been experiencing the following symptoms: a light cough, body feeling hot, loss of senses of smell and taste, nose burning when he inhales, and overall weakness. *Id.* He requested a COVID-19 test as a "precaution" of his having and spreading the virus. *Id.*

The following day, he was called to the medical unit where he explained his symptoms to Nurses Sandy and Andrea. *Id.* at ¶¶ 6-7. They checked his temperature and heart rate but would not give him a COVID-19 test. *Id.* at ¶ 7. Nurse Andrea said that everyone had COVID-19 and there was nothing she could do. *Id.* at ¶ 8. She advised Sellers to lie down until he felt better. *Id.*

Sellers treated himself for two months. *Id.* at ¶ 12.

On June 13, 2020, Medical Supervisor Nicole gave Sellers a COVID-19 antibody test to see if he had ever been exposed to the virus. *Id.* at ¶ 13. On August 18, 2020, Sellers received test results showing that he had been exposed to COVID-19 in the past. *Id.* at ¶ 14.

**III.   Analysis**

Sellers asserts three claims for deliberate indifference to medical needs and denial of equal protection based on the following actions: (1) Nurses Andrea and Sandy failed to give him a COVID-19 test or treat his symptoms; (2) Medical Supervisor Nicole failed to properly train and supervise Nurses Andrea and Sandy; and (3) Warden Martin and Commissioner Cook failed to properly train and supervise defendants Nicole, Andrea, and Sandy. Sellers' second and third claims are based on a theory of supervisory liability.

A. <u>Deliberate Indifference to Medical Needs</u>

Sellers argues that Nurses Andrea and Sandy were deliberately indifferent to his medical needs by denying him a COVID-19 test after he experienced symptoms and failing to provide treatment for his symptoms beyond a recommendation for rest.

As the Court explained in the Initial Review Order, doc. no. 14, to state a plausible Section 1983 claim for deliberate indifference to medical needs in violation of the Fourteenth Amendment, Sellers must plead facts sufficient to establish both that the conditions he experienced were "sufficiently serious to constitute objective deprivations" of his rights, and that "the [defendant] officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). More specifically, the "serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019). "In most cases, the

actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Id.*

Sellers describes the symptoms he had on April 18, 2020 as a light cough, body feeling hot, loss of senses of smell and taste, nose burning when inhaling, and overall weakness. Despite being advised of the importance of the consequences of the defendants' actions in determining whether he was subjected to a risk of serious harm, Sellers alleges no facts suggesting he has suffered longer-term symptoms or that these symptoms worsened as a result of the denial of specific treatment. Thus, from the facts alleged, the denial of treatment caused no serious medical consequences.

In addition, in April 2020, there was no known treatment for mild cases of COVID-19, nor was there any cure for COVID-19. *See Chunn v. Edge*, 465 F. Supp. 3d 168, 193 (E.D.N.Y. 2020) ("[T]here are virtually no clinical interventions for [COVID-19] patients who present with mild symptoms" (internal quotation marks omitted)); *United States v. Fisher*, 2020 WL 2769986, at *4 (D. Md. May 27, 2020) (noting that "the World Health Organization declared COVID-19 a global pandemic on March 11, 2020," and "no vaccine, cure, or 'proven effective treatment'" was "currently available") (citations omitted)), *appeal dismissed*, 851 F. App'x 442 (4th Cir. 2021); *Lawrence v. Colorado*, 455 F. Supp. 3d 1063, 1074 n.20 (D. Colo. 2020) (no proven vaccine or treatment in April 2020) (citation omitted). As there was no proven treatment at that time for COVID-19 cases like Sellers', Nurses Andrea and Sandy were not deliberately indifferent to Sellers' health by telling him there was nothing they could do and advising bedrest.

Furthermore, Sellers' claim that the nurses declined to give him a COVID-19 test raises, at most, negligence, which is not cognizable under Section 1983. *See Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021) ("[M]ere medical malpractice is not tantamount to deliberate

difference absent a showing of conscious disregard of a substantial risk of serious harm." (cleaned up)); *Darnell*, 849 F.3d at 36 (The second prong of the deliberate indifference standard under the Fourteenth Amendment standard applicable to claims of pretrial detainees "requires proof . . . that an official acted intentionally or recklessly, and not merely negligently."); *see also Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (claim that "physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"). Nor does Sellers allege that he suffered any injury from the failure to administer a test. Thus, Sellers' allegation that the nurses refused to give him a COVID-19 test, even if incorrect, does not rise to the level of deliberate indifference. *See London v. Dzurenda*, 2022 WL 3139104, at *7-8 (E.D.N.Y. Aug. 5, 2022) (denial of COVID-19 test to pretrial detainee showing COVID-19 symptoms did not constitute deliberate indifference under the Fourteenth Amendment); *see also Laferriere v. Bodwell*, 2021 WL 1386989, at *3 (W.D. Wash. Apr. 13, 2021) (medical providers' failure to give plaintiff a COVID-19 test not necessarily deliberate indifference). Sellers' deliberate indifference claims against Nurses Andrea and Sandy are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

    B.  <u>Denial of Equal Protection</u>

Sellers also characterizes the failure to give him a COVID-19 test, denial of transfer to Northern C.I., and denial of treatment for COVID-19 as a denial of equal protection. He alleges that certain prisoners "expressed symptoms of COVID-19 verbally and w[ere] given a test," and when they tested positive, they were sent to "Northern C.I. to be treated and recover from the virus." Doc. No. 18 at ¶ 5; *see also id.* at ¶ 9.

"To prevail on an equal protection claim, 'a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful

discrimination.'" *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (citation omitted). Sellers does not allege that he was treated differently because he belonged to a protected class or group. Thus, I consider his claim under a "class of one" theory. To prevail, Sellers must allege fact showing "that he has been 'intentionally treated differently from others similarly-situated and that there is no rational basis for the difference in treatment.'" *Id.* (citation omitted). Under a class of one theory, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high. More precisely, a plaintiff must establish that he and a comparator are *prima facie* identical." *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation marks and citation omitted). In addition, the injury involved in a class of one claim is intentional, arbitrary, and irrational discrimination, not a mere difference in outcomes. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

      Sellers compares himself to other inmates who made a verbal complaint of symptoms and were given a COVID-19 test, quarantined, and, as he alleges, "treated." He does not allege any facts regarding the inmates' actual symptoms. COVID-19 symptoms vary widely from person to person. *See Deer Mountain Inn LLC v. Union Ins. Co.*, 541 F. Supp. 3d 235, 238 (N.D.N.Y. 2021) ("COVID-19 causes no symptoms at all in some patients, while in others it causes symptoms with a range of severity, including pneumonia, fever, cough, dyspnea, bilateral infiltrates on chest imaging, severe respiratory failure requiring ventilation and support in an intensive care unit, and death."). Without allegations describing the symptoms of the other inmates, Sellers has not identified any person similarly situated. In addition, Sellers only alleges a different decision. He has not shown intentional, arbitrary, and irrational discrimination. Thus, he fails to state a plausible equal protection claim. The equal protection claim against Nurses Andrea and Sandy is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C. <u>Supervisory Liability</u>

Sellers' claims against defendants Nicole, Martin, and Cook are based on a theory of supervisory liability. Supervisors cannot be held liable merely because they hold these positions. The Second Circuit recently clarified the standard to be applied to a claim of supervisory liability. *See Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Knowledge that unconstitutional acts were occurring is insufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[] to the supervisor's violating the Constitution.'" *Id.* at 616-17 (quoting *Iqbal*, 556 U.S. at 677). To plausibly state a deliberate indifference claim against a supervisor, Sellers must allege facts showing that the supervisor "acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [he] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Sellers' supervisory liability claims are based on the alleged failure of Warden Martin, Commissioner Cook, and Medical Supervisor Nicole to properly train and supervise Nurses Andrea and Sandy. *See* Doc. No. 1 at 7. Absent evidence of their personal involvement in the underlying claims, however, a failure to train or supervise does not state a cognizable claim for supervisory liability. *See Robinson v. Graham*, 2021 WL 2358415, at *3 (N.D.N.Y. June 9, 2021) (dismissing claim against supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims that is no longer available"

7

after *Tangreti*); *Boyd v. Larregui*, 2020 WL 5820491, at *7 (D. Conn. Sept. 30, 2020) (dismissing claim for failure to train subordinates where plaintiff failed to establish personal involvement of supervisory defendant or "provide particular relevant deficiencies in training program").

Sellers alleges no facts relating to Warden Martin or Commissioner Cook. On several occasions in his complaint, Sellers refers to an undefined "they"—without attributing the conduct to any of the defendants. *See e.g.*, Doc. No. 18 at ¶ 3 ("[T]hey moved several inmates to Northern C.I."); *id*. at ¶ 4 ("They utilized Northern C.I. to isolate and treat inmates who were positive for Covid-19"). Without any facts attributing his injuries to Warden Marten or Commissioner Cook, Sellers' claim is based only on their positions as supervisory officials. Accordingly, the claims against Warden Martin and Commissioner Cook are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Furthermore, nowhere in his complaint does Sellers allege that Medical Supervisor Nicole was involved in his treatment on April 18, 2020, or even that she knew he had been denied a COVID-19 test and treatment for his symptoms on that date. Sellers refers generally to "medical staff" when he alleges that he "wrote to medical staff" about his symptoms, requesting transfer to Northern C.I. *See* Doc. No. 18 at ¶ 5. Elsewhere in the complaint, he discusses "explain[ing his] symptoms to nurse Sandy and Andrea." *See id*. at ¶ 7. Regarding Medical Supervisor Nicole, Sellers alleges only that she gave him a COVID-19 antibody test in June 2020. *See id*. at ¶ 13. Thus, Sellers also fails to state a plausible claim against Medical Supervisor Nicole. The claim against her is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**IV.** **Conclusion**

For the foregoing reasons, Amended Complaint is **DISMISSED** under 28 U.S.C.

§ 1915A(b)(1) **without prejudice** to refiling. If the plaintiff believes there are additional facts the plaintiff can allege that will overcome the deficiencies identified in this order, the plaintiff may file a Second Amended Complaint within **thirty (30) days**. Sellers is advised that any amended complaint will fully supplant previous complaints and must, therefore, include all relevant facts.

    So ordered.

Dated at Bridgeport, Connecticut, this 21st day of December 2022.

    /s/ STEFAN R. UNDERHILL
    Stefan R. Underhill
    United States District Judge